UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Boston Teachers Union, Local 66 )<br>    Plaintiff, )<br> )<br>    vs. )<br> )<br>The School Committee of the City of Boston)<br>and Boston Public Schools, )<br>    Defendants. )<br> ) | Civil Action No. _____ |

## **DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. Plaintiff Boston Teachers Union ( "BTU") is an employee organization within the meaning of G. L. c. 150E that represents more than 10,000 teachers and other professionals, including school nurses, psychologists, guidance counselors, paraprofessionals, and substitute teachers employed by Boston Public Schools.

2. Plaintiff brings this action against the Defendants the School Committee of Boston and Boston Public Schools ( "Defendants" or "BPS") arising under Mass. Gen. L. c. 151B, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. (the ADA), for discrimination, retaliation, and/or failure to accommodate.

**VENUE AND JURISDICTION**

3. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §1331.

4. Many of the claims of Plaintiff arise under federal law, including the ADA.

5. Venue is proper in this district under 28 U.S.C §§1391.

1

**PARTIES**

6. Plaintiff BTU is located at 180 Mt. Vernon Street in Dorchester, MA, 02108 and represents approximately 10,000 teachers, paraprofessionals, and other public school service providers within the district for Boston Public Schools.

7. Defendants are located at 2300 Washington Street, 5th Floor, in Roxbury, MA, 02119.

**FACTUAL ALLEGATIONS**

8. The COVID-19 pandemic has posed a risk to all but also a greater risk to those with underlying health conditions and/or disabilities.

9. Throughout the 2020-2021 school year, a number of the Union's bargaining unit members made requests for reasonable accommodation(s) because of disabilities they had that put them at high risk for serious complications and/or death if they were to contract COVID-19.

10. These requests were submitted to the BPS Office of Equity (OOE). OOE is the department responsible for processing requests for accommodations for BPS.

11. Many of these requests for accommodations were a response to BPS requesting employees to return to work in-person.

12. BPS failed to engage with employees and their requests for accommodations promptly and/or properly, including but not limited to:
    a. Some requests for accommodations went ignored for months at a time.
    b. Some employees were abruptly ordered into work without any substantive discussions about their accommodation requests and/or guidance and/or opportunity to have ongoing dialogue.
    c. Certain employees were expressly discouraged by BPS from requesting accommodations.
    d. Employees received conflicting information about their requests for accommodations and/or the status of such requests from the OOE and/or their principals.
    e. Certain employees were flatly denied their requests for accommodations without any meaningful interactive processes.

13. BPS failed to engage in the interactive process with the following employees. Identifying information has been removed for privacy.

i. Employee A, a teacher with a high-risk pregnancy requested a remote work accommodation in February of 2021. She experienced unreasonable delay in the processing of her request and was even discouraged by the Defendants from seeking an accommodation. Eventually, BPS denied Employee A's requests for accommodations thus forcing Employee A to take unpaid leave pursuant to the Family Medical leave Act (FMLA) from approximately April to May of 2021. In addition to Employee A's requests for remote work being denied, Employee A's requests for certain accommodations related to her pregnancy, including access to a private bathroom and a 10-minute break, were also denied. As a result, Employee A returned to in-person work on June 1, 2021. Subsequently, on June 9, 2021, Employee A's medical condition deteriorated to the point where she needed an ambulance to take her from her school to a local hospital.

ii. Employee B, a 57-year-old paraprofessional with more than 20 years serving BPS requested accommodations for remote work in October 2020 due to her severe asthma. Her request went unanswered for four months, to only be denied. OOE informed Employee B that her principal denied the request. Upon further discussion with her principal, Employee B was told by her principal that OOE was the one that made the decision. Thereafter, Employee B made yet another attempt for a request for accommodation, only to be flatly denied without any substantive discussion or good-faith interactive process.

iii. Employee C, a 58-year-old paraprofessional, made a request for accommodation for remote work in January of 2021 due to her diabetes and hypertension. Employee C received no response from BPS until 3 days before resumed in-person instruction, at which point she was ordered to return to in-person work. Employee C was not provided any good-faith interactive process. Employee C subsequently contracted COVID-19 and was forced to miss over a month of work, only returning after she was fully vaccinated in May of 2021.

iv. Employee D, a 65-year-old teacher with a rare autoimmune disease that often manifested as severe asthma, submitted an accommodation request in the summer of 2020. This was granted temporarily in September and expired on

3

|   |   |
|---|---|
|   | October 1, 2020, during a time where students districtwide were still remote. However, Employee D asked for guidance and help regarding what would happen once students returned to in-person learn. The Defendants failed to provide any meaningful guidance and/or substantive response. Employee D was forced to use unpaid leave throughout her leave of absence. Due to months of no guidance or substantive response from BPS, Employee D retired in February of 2021 – over 6 months after her request for accommodations was submitted. |
| v. | Employee E, a music teacher with Type I diabetes submitted an accommodation request for remote work in September of 2020. After repeated attempts to contact the Defendants were ignored, he was eventually informed that the OOE had received his communications and no further action was required. No guidance or good-faith interactive process was conducted by Defendants and months went by without any communication from Defendants. Employee E was forced to return to work on a hybrid schedule in early 2021.  Not only did Defendants fail to promptly and properly communicate with Employee E, but Defendants then emailed Employee E in March of 2021 requesting an update from him. |
| vi. | Employee F, a physical education teacher with a genetic heart defect that resulted in a near-death experience in the summer of 2019, submitted an accommodation request for remote work in September of 2020. His doctor advised him that there was a high probability that COVID-19 would result in his death if he were to contract it. Employee F's doctor advised that he work remotely. He temporarily worked remotely until BPS transitioned to in-person learning, at which time Employee F was given a short notice that he would be required to work in-person. Employee F reminded Defendants of his doctor's advice and the likely fatal consequences, however, Defendants declined to provide further remote work accommodations.  As a result, Employee F had to use his accrued personal time until he was fully vaccinated before returning to in-person work. |
| vii. | Employee G, a teacher with asthma, submitted an accommodation request for remote work in August 2020 that was also accompanied by a supporting letter |

          from her doctor. Her request for an accommodation went unanswered by the Defendants for weeks, forcing Employee G to reach out again in September, where she was told that her request would not be addressed until she was required to come back to in-person work.

    viii.    In October, 2020, Employee G was told by BPS that they would not spend any extra money to accommodate her, and she was told that she had to find coverage for her classroom in a manner that would not incur additional expense for Defendants. After the entire District went remote due to the pandemic, it was only then that Employee G was able to work remotely. However, she attempted to get clarity and guidance regarding her accommodation requests once in-person work would resume, however, her communications went unanswered for months. Employee G was also discouraged from applying for leave. She did not return to in-person work until she was fully vaccinated in April.

    ix.    Employee H, a teacher who made an accommodation request to work remotely due to her serious hearing problems that require the use of hearing aides. Without hearing aides, Employee H is nearly deaf. Due to her medical condition, it means that if she were to wear headphones while instructing remote students, she would be unable to hear any students who were in-person in her classroom. Although Employee H's request for accommodation was initially granted, BPS rescinded it the school day before in-person learning was to recommence at her school. She subsequently filed a complaint at the Massachusetts Commission Against Discrimination.

14. OOE has a history of inaction, delayed responses, discouragement, conflicting/confusing information and/or guidance for Union members.

15. On March 29, 2021, the Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC). The EEOC provided the Plaintiff Notice of the Right to Sue on November 8, 2021.

16. Consequently, on March 29, 2021, the Plaintiff filed a charge against the Defendants with the EEOC, based on Defendants' failure to engage in the interactive process and/or provide

reasonable accommodations for BTU members. Plaintiff's EEOC charge highlighted how BTU members have been discriminated against on the basis of their protected class status and/or retaliated against in violation of G. L. c. 151B and the ADA.

## CAUSES OF ACTION

### COUNT I – DIABILITY DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B

17. Based on the foregoing, the Plaintiff asserts that pursuant to G.L. c.151B, § 4(4): (1) Plaintiff's members referenced herein and others are qualified handicapped person(s); (2) The Defendants knew they were handicapped person(s) within the meaning of the law; (3) They were able to perform the essential functions of the position(s) with or without a reasonable accommodation; and (4) They suffered an adverse employment action because of their disability. Consequently, they suffered damages.

### COUNT II – FAILURE TO ACCOMMODATE IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B

18. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

19. The Defendant failed to accommodate the Plaintiff's members pursuant to G.L. c. 151B, 4(16) in that: (1) The Plaintiff's membership include qualified handicapped persons; (2) They needed reasonable accommodation(s) due to their handicap to transition back to work; (3) The Defendants were aware of their handicap(s) and that the need for reasonable accommodation(s); (4) The Defendants were aware of a means to reasonably accommodate their handicap(s), and, alternatively, failed to investigate a means to reasonably accommodate their handicap(s); and (5) the Defendants failed to provide a reasonable accommodation(s). Consequently, Plaintiff's handicapped members suffered damages.

### COUNT III – FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

20. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

21. The Plaintiff asserts pursuant to 42 U.S.C. §12112(b)(5)(A): (1) Plaintiff's had members disabled within the meaning of the ADA; (2) those members were able to perform the

essential functions of the job with or without reasonable accommodation(s); (3) The Defendant was that certain members of the union needed a reasonable accommodation(s); (4) The Defendants were aware of a means to reasonably accommodate member's disability, and, alternatively, failed to engage in the interactive process; and (5) The Defendants failed to provide a reasonable accommodation. Consequently, the Plaintiff suffered damages.

## COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

22. The Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

23. The Plaintiff asserts that pursuant to 42 U.S.C. § 12112(a): (1) Plaintiff's members were disabled within the meaning of the law; (2) those members were able to perform the essential functions of the job, with or without reasonable accommodation(s); (3) The Defendants knew that the Plaintiff was a qualified disabled person; and (4) The Defendant took adverse employment actions against the union members because of their disability. Consequently, the Plaintiff suffered damages.

## COUNT IV – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA

24. The Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

25. The Plaintiff asserts that pursuant to 42 U.S.C. § 12112(a): (1) Plaintiff members included qualified individuals with disabilities; (2) they were subjected to unwelcome harassment; (3) The harassment was based on their disabilities; (4) The harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of Plaintiff's employment; and (5) The Defendant is liable for that harassment.

\*\*Space left intentionally blank\*\*

## PRAYER FOR RELIEF

26. Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in Plaintiff's favor and against the Defendants, and order:

   I. Judgment against the Defendants;

   II. Damages, including compensatory (including back and front pay), emotional distress, punitive, and/or liquidated, to the Plaintiffs, as authorized or mandated by applicable law, in an amount to be determined at trial;

   III. Defendant to compensate Plaintiff with costs and any reasonable attorney's fees;

   IV. Pre-judgment and post-judgment interest;

   V. Appropriate injunctive, declaratory, and other equitable relief; and

   VI. Such other relief as is deemed just and proper under the circumstances.

## JURY DEMAND

The Plaintiff hereby demands a jury trial on all triable issues.

Respectfully submitted,
The Boston Teachers Union,
By its attorney,


/s/Jamie Goodwin
Jamie Goodwin, BBO No. 673207
KJC Law Firm, LLC
10 Tremont Street, 5th Floor
Boston, MA 02108
617-720-8447
jgoodwin@kjclawfirm.com

Date: February 6, 2022